```
              IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF KANSAS



BRISMAEGI CRAWFORD-TURNER,

                  Plaintiff,

vs.                                      Case No. 15-1224-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

                  Defendant.
```

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by

1

such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

    The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or mental impairment or impairments must be of such severity that

they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step

requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).  At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC).  This RFC assessment is used to evaluate the claim at both step four and step five.  20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II.  History of case

On January 22, 2014, administrative law judge (ALJ) Guy E. Taylor issued his decision (R. at 13-22).  Plaintiff alleges that she had been disabled since January 1, 2010 (R. at 13). Plaintiff meets the insured status requirements for social security disability benefits through December 31, 2013 (R. at

15).  At step one, the ALJ found that plaintiff did not engage in substantial gainful activity since January 1, 2010 (R. at 15).  At step two, the ALJ found that plaintiff had a severe combination of impairments (R. at 16).  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 16).  After determining plaintiff's RFC (R. at 17), the ALJ found at step four that plaintiff could not perform past relevant work (R. at 20).  At step five, the ALJ found that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 20-21).  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 21-22).

**III.  Did the ALJ err by failing to consider medical source opinions regarding carpal tunnel syndrome?**

On September 18, 2012, Dr. Kala Danushkodi performed a consultative examination on the plaintiff (R. at 390-393).  Dr. Danushkodi noted increased sensations to touch in the median nerve distribution of both hands and positive Tinel signs in both wrists.  She diagnosed bilateral carpal tunnel syndrome, and stated that given those symptoms, "she should be restricted with repetitive hand activities" (R. at 391).  On December 13, 2012, Dr. Kindling, a state agency physician, reviewed the medical records, noting positive Tinel signs in both wrists.  He indicated that carpal tunnel syndrome has been documented by

positive Tinel signs, although noting it was mild and can be expected to have only a minor impact on her function (R. at 94). He opined that plaintiff would be limited to frequent fingering in both hands due to carpal tunnel syndrome (R. at 93-94). Furthermore, medical treatment notes diagnosed carpal tunnel syndrome in January 2012, and plaintiff was advised to try wrists splints at night (R. at 427).

In his decision, the ALJ found that plaintiff's carpal tunnel syndrome was not a medically determinable impairment, noting little, if any, follow-up treatment, an examination in February 2012 showing normal range of motion of her extremities, and that she takes only over the counter Tylenol for pain, which suggests her pain is not that severe (R. at 16).

Although the ALJ mentioned the opinion of Dr. Danushkodi assessing plaintiff with carpal tunnel syndrome, the ALJ never mentioned the opinion of Dr. Danushkodi that plaintiff's carpal tunnel syndrome would result in a limitation to repetitive hand activities. The ALJ completely ignored the opinion of Dr. Kindling that carpal tunnel syndrome is documented in the record, and his opinion that plaintiff has limitations resulting from it. Both of their opinions contradict the report from the ALJ that plaintiff's carpal tunnel syndrome is not a medically determinable impairment. There is no medical opinion evidence

6

indicating that plaintiff's carpal tunnel syndrome is not a medically determinable impairment.

An ALJ must evaluate every medical opinion in the record. Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004). This rule has been described as a "well-known and overarching requirement." Martinez v. Astrue, 2011 WL 1549517 at *4 (10th Cir. Apr. 26, 2011). Even on issues reserved to the Commissioner, including plaintiff's RFC and the ultimate issue of disability, opinions from any medical source must be carefully considered and must never be ignored. Social Security Ruling (SSR) 96-5p, 1996 WL 374183 at *2-3. The ALJ "will" evaluate every medical opinion that they receive, and will consider a number of factors in deciding the weight to give to any medical opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c). It is clear legal error to ignore a medical opinion. Victory v. Barnhart, 121 Fed. Appx. 819, 825 (10th Cir. Feb. 4, 2005). Furthermore, according to SSR 96-8p:

> The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.

1996 WL 374184 at *7.

Although an ALJ is not required to discuss every piece of evidence, the ALJ must discuss significantly probative evidence that he rejects. Clifton v. Chater, 79 F.3d 1007, 1009-1010

7

(10th Cir. 1996). Furthermore, the general principle that the ALJ is not required to discuss every piece of evidence does not control when an ALJ has opinion evidence from a medical source. In such a situation, the ALJ must make clear what weight he gave to that medical source opinion. Knight v. Astrue, 388 Fed. Appx. 768, 771 (10th Cir. July 21, 2010).

The ALJ clearly erred by failing to fully consider the medical source opinions of Dr. Danushkodi and Dr. Kindling. Their opinions clearly contradict the finding of the ALJ that plaintiff's carpal tunnel syndrome is not medically determinable. Furthermore, the lack of treatment mentioned by the ALJ does not play a role in the determination of the existence of or the severity of an impairment. This is because the lack of treatment for an impairment does not necessarily mean that the impairment does not exist or impose functional limitations. Grotendorst v. Astrue, 370 Fed. Appx. 879, 883 (10th Cir. March 22, 2010). This case shall therefore be remanded in order for the ALJ to consider the medical opinion evidence regarding plaintiff's carpal tunnel syndrome.

**IV. Did the ALJ err in his assessment of the opinions of Dr. Paul Kim, a licensed psychiatrist?**

On September 6, 2012, Dr. Paul Kim performed a psychiatric examination on the plaintiff (R. at 381-385). Dr. Kim interviewed plaintiff and reviewed the medical records (R. at

381).  Dr. Kim noted in his report that plaintiff was prescribed citalopram by her primary care physician in June 2012 (R. at 382, 422).[1]  Dr. Kim opined that plaintiff does not appear to be able to sustain a 40-hour workweek on a continuous basis due to her ongoing difficulties in working with others.  He felt plaintiff was highly impaired socially and has difficulty adapting to her environment (R. at 385).

The ALJ did mention this medical source opinion.  The ALJ gave this opinion little weight because it was before plaintiff started taking an anti-depressant medication.  The ALJ also noted that the state agency psychologist indicated that plaintiff had moderate mental symptoms and limitations, which is given some weight because it is supported by her lack of mental health treatment, the effectiveness of her medications, her drug use, and her poor work history in the past (R. at 20).  The ALJ had previously stated that failure to seek medical attention is inconsistent with complaints of disabling mental symptoms (R. at 18).

The first reason for discounting the opinions of Dr. Kim is that his consultative examination was performed before she starting taking an anti-depressant medication.  However, as was set forth above, plaintiff started taking citalopram, an anti-depressant medication in June 2012 (R. at 382, 422).  Dr. Kim

---

[1] Citalopram is an antidepressant used to treat depression. http;://drugs.com/citalopram.html (Aug. 22, 2016).  The treatment record shows it was prescribed on June 22, 2012 (R. at 422).

9

performed his psychiatric assessment on September 6, 2012, after she began taking this medication.  Thus, this rationale by the ALJ does not provide a legitimate basis for discounting the opinions of Dr. Kim.

The ALJ also discounted the opinion of Dr. Kim because the state agency psychologist indicated that plaintiff had moderate mental symptoms and limitations, which is given some weight because it is supported by her lack of mental health treatment; the ALJ had previously stated that the failure to seek medical attention is inconsistent with complaints of disabling mental symptoms.  The record contains two reports from state agency consultants. Dr. DeVore opined on October 15, 2012 that plaintiff is capable of simple work tasks and would need restrictions in contact with others (R. at 63-66).  Dr. Witt opined on December 17, 2012 that plaintiff can carry out simple instructions and can maintain attention for an 8 hour workday, but should have limited social interaction (R. at 95-96).

The ALJ gave some weight to the state agency assessments because their opinions were supported by her lack of mental health treatment (R. at 20).  The ALJ limited plaintiff to simple, unskilled work, and no more than 1/3 of the day in contact with co-workers, supervisors and the public (R. at 17).

Dr. Kim stated in his report that if plaintiff were to re-engage in therapy with someone she trusted and continued

10

receiving appropriate medication management of her illness, he opined that it would be likely that she could show considerable improvement.  However, Dr. Kim further stated that due to plaintiff's distrustful state, this does not appear likely in the near future.  As a result, her prognosis is guarded to poor (R. at 385).

Clearly, the ALJ relied on her lack of mental health treatment to discount the opinions of Dr. Kim.  However, federal courts have recognized a mentally ill person's noncompliance with treatment can be, and usually is, the result of the mental impairment itself, and therefore neither willful nor without a justifiable excuse.  Courts considering whether a good reason supports a claimant's failure to comply with prescribed treatment have recognized psychological and emotional difficulties may deprive a claimant of the rationality to decide whether to continue treatment or medication.  Pate-Fires v. Astrue, 564 F.3d 935, 945 (8th Cir. 2009).  In this case, the court found that the evidence overwhelmingly demonstrated that the claimant's non-compliance was attributable to her mental illness.  The court held that the ALJ's conclusion that plaintiff's medical non-compliance was not justifiable and precludes a finding of disability was not supported by substantial evidence.  Id. at 946.  See Blankenship v. Bowen, 874 F.2d 1116, 1124 (6th Cir. 1988)(It is a questionable practice

to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation).

As was the case in Pate-Fires, Dr. Kim indicated in his report that plaintiff, due to her distrustful state, would not likely engage in therapy. There is no medical source evidence disputing this finding by Dr. Kim. Thus, the undisputed evidence in this case is that plaintiff's lack of mental health treatment is a result of the mental impairment itself.

Contrary to the ALJ's assertion, plaintiff was receiving anti-depressant medication when she was evaluated by Dr. Kim. Furthermore, the lack of mental health treatment cannot serve as a basis for either discounting the opinions of Dr. Kim or giving greater weight to the state agency consultants (or discounting plaintiff's credibility) because Dr. Kim had indicated in his report that plaintiff's distrustful state made it appear unlikely that she would re-engage in therapy. The undisputed medical opinion evidence in this case is that plaintiff's lack of mental health treatment is attributable to her mental illness, specifically her distrustful state. For these reasons, the court finds that the ALJ's reasons for discounting the opinions of Dr. Kim are not supported by substantial evidence.

**V. Did the ALJ err in his analysis of plaintiff's credibility?**

Plaintiff has also asserted error by the ALJ in evaluating plaintiff's credibility. The court will not address this issues

12

because it may be affected by the ALJ's resolution of the case on remand after the ALJ gives proper consideration to the medical source opinions, including the opinions of Dr. Kim, Dr. Danushkodi, and Dr. Kindling.  See Robinson v. Barnhart, 366 F.3d 1078, 1085 (10th Cir. 2004).

    IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

    Dated this 2nd day of September 2016, Topeka, Kansas.

                                s/Sam A. Crow
                                Sam A. Crow, U.S. District Senior Judge